Nat Gluck et al., on Their Own Behalf and on Behalf of All Other Stockholders of British Type Investors, Inc., Respondents, and William C. Schrader and Another, Intervenors-Respondents, *v.* Edward V. Otis et al., Appellants, Impleaded with Others.

First Department, December 23, 1942.

*Kenneth M. Spence* of counsel (*James H. Halpin* with him on the brief; *Spence, Windels, Walser, Hotchkiss & Angell,* attorneys), for appellants.

*Raymond L. Wise* of counsel (*Theodore W. Kohn* with him on the brief; *Oscar Schleiff,* attorney) for respondents.

UNTERMYER, J.   The plaintiffs in this derivative action are owners of non-voting Class "A" preferred stock of British Type Investors (herein referred to as BTI) holding 983 out of 1,198,000 outstanding shares.  The defendants Otis and Franklin are officers and directors of BTI and of other of the corporate defendants.  The defendant Bailly-Blanchard has been a director of BTI since 1931 the defendant Weber from 1929 to November, 1939.

The corporate defendants are BTI, the parent company, a Delaware corporation organized in 1928; Empire American Securities Corporation (herein referred to as " Empire "), a Delaware corporation organized in 1929 and controlled by BTI since 1933; Scottish Type Investors, Inc. (herein referred to as STI), a Delaware corporation organized by BTI in 1930, and Allied International Investing Corporation (herein referred to as " Allied "), a Delaware corporation organized in 1927 controlled by BTI since 1937.

Five other corporations not named as parties are involved in certain of the transactions which are the subject of this action. They are Automatic Products Corporation (controlled by Allied since 1938) ; Spun Steel Corporation, Connecticut Telephone and Electric Corporation and Mercury Clutch Corporation which in turn are controlled by Automatic, and Majestic Radio and Television Corporation, which is controlled by Allied and Automatic.

The complaint alleges that the individual defendants, as officers and directors of BTI, imprudently and improvidently made investments in the stock of Empire, Allied and Majestic, and conspired to acquire stock in the corporate defendants and subsidiaries which are not parties to this action, to enable them to become officers and thus pay themselves excessive salaries. The allegation that an improper and illegal dividend of approxi-

mately $36,000 was paid by BTI in 1937 was first withdrawn by plaintiffs, then reinstated, but the court made no finding with respect thereto.

The defendants Franklin and Otis are experienced executives who, during all the period under consideration, devoted their efforts exclusively to the management of these corporations, whose total assets exceeded $4,750,000. From 1929 to 1932 they each received substantially the same amounts of compensation from BTI, ranging from about $7,400 to $12,700. From 1933 to 1936 they each received from BTI, STI and Empire compensation ranging from $9,700 to $11,800, from 1937 to 1939 their compensation from BTI, STI, Empire, Allied and Automatic ranged from $12,500 to $16,700. This compensation included nominal sums for directors' fees.

The action is in equity. It resulted in an interlocutory judgment directing repayment by the defendants Franklin and Otis, jointly and severally, of all compensation received by them from the corporate defendants and certain of the subsidiaries not parties to this action, from December 20, 1933, to December 31, 1939, amounting to $148,901.12. As to payment of such compensation, the court held that the six-year Statute of Limitations (Civ. Pr. Act, § 48) applied. The court declined, however, to allow recovery for compensation paid to the defendants Franklin and Otis for the years 1940 and 1941, holding that throughout that period they began to earn their compensation. The reason for this conclusion would seem to be that the earnings of the companies began then to improve on account of conditions caused by the war. The judgment further directs that the individual defendants account for any losses resulting to the corporate defendants from the investment in Allied and Majestic stock, which the court held to have been improvidently made. As to any other losses alleged to have been the result of negligence on the part of the defendants Franklin and Otis, the court held that the three-year Statute of Limitations (Civ. Pr. Act, § 49) would apply.

Since its incorporation in 1928, BTI has been engaged in the business of holding securities of other corporations and in acting generally as an investment trust. It grew out of a common-law investment trust organized by the defendants Otis and Franklin in which relatives and friends were the only shareholders. On February 7, 1928, the defendants abolished that voting trust and created the BTI. The beneficiaries of this trust exchanged their trust shares for Class A stock of BTI. The Class A stock of which 1,156,000 shares were sold to the public

is preferred in dividends and liquidation but without voting rights. The voting rights are vested in the Class B stock. Out of 33,700 shares of Class B stock about fifty-four percent was subscribed by the defendant Otis or the members of his family and about twenty-eight percent by the defendant Franklin and members of his family. In addition to the stock obtained on their exchange of their trust shares Otis and Franklin and their families have invested more than $185,000 in Class A non-voting stock which they still hold. No question is presented on this appeal as to any negligence in connection with STI or Empire. The court having applied the three-year Statute of Limitations, held that any claim for such negligence was barred.

Until 1937 BTI was operated as an investment trust holding primarily listed securities. In 1937 the defendant directors decided that the investment of its capital in securities listed on stock exchanges had become hazardous and no longer profitable and decided that the capital could be more profitably employed by confining the operations of BTI to the financing and development of small manufacturing companies, referred to as " special situations." In line with this policy, in September, 1937, BTI acquired control of Allied, another investment trust, by the purchase of 3,796 preferred shares and 48,337 shares of common stock which had voting rights and thus controlled the company. In 1939 Allied acquired control of Automatic which in turn controlled Spun Steel, Connecticut Telephone and Mercury Clutch, and early in 1939 Allied acquired a controlling interest in Majestic.

It was the plaintiffs' theory that the defendants Franklin and Otis had caused the incorporation of BTI and had caused it to engage in subsequent operations for the purpose of securing salaries to themselves. It was further asserted that BTI and the subsidiaries had been the victims of such mismanagement that these officers and directors were not entitled to compensation. The evidence which is relied on, however, to sustain the first of these charges seems to consist in the fact that these two defendants had no other means of livelihood, but that circumstance does not, of course, establish such a charge. The Special Term expressed the view that " what they [these two defendants] should have done way back in the early 30's, back, say, in '31 or '32, would have been to have wound up these companies and distribute the assets to the stockholders, who were their real owners, instead of using them as they have done for ten years or more for their own selfish purposes." No doubt the defendants, looking back over the history of the past ten years, would today agree that it would have been to the advantage of the

stockholders of this investment trust to have taken such a course. But they lacked the advantage " in the early 30's " of a wisdom which was born after the event. Instead they were confronted with the vicissitudes of a future which was then unknown and unknowable. We cannot say that their failure to prevail on the shareholders to liquidate a corporation which was created for the very purpose of investing in securities was an act of negligence, ignorance or bad faith.

The evidence offered to sustain the second charge consists principally of evidence that throughout most of this period the operations of BTI and its subsidiaries were highly unsuccessful coupled with the claim that the acquisition of certain of the subsidiaries was improvident and wasteful. It must be remembered, however, that the contention is not made that either of these defendants made unlawful profits at the expense of the corporation except to the extent that they received salaries which, it is asserted, they did not earn. Under these circumstances it was not sufficient to show losses sustained by the corporation or that certain of its investments were unfortunate and perhaps disastrous. In order to succeed it was necessary for the plaintiffs to establish that these defendants did not manifest a proper degree of prudence in making the investments or failed to exercise ordinary diligence in the management of the affairs of the corporation. (*Jacobson* v. *Brooklyn Lumber Co.*, 184 N. Y. 152; *Winter* v. *Anderson*, 242 App. Div. 430.)

We have scrutinized the record in vain for such evidence. On the contrary, it establishes that the investments which are criticized were made after careful investigation and upon the advice of firms competent to render such a service. It cannot be said that the action of these defendants taken upon such advice was negligent and renders them liable for the losses incurred. In so far as the general management of the corporation by these defendants in other respects is concerned, there is no evidence that it was extravagant or wasteful and there is, therefore, no reason to deprive them of all salary unless success, rather than the exercise of ordinary prudence and diligence, is held to be indispensable to the right to compensation.

The judgment should be reversed with costs, and the complaint dismissed with costs.

MARTIN, P. J., TOWNLEY, COHN and CALLAHAN, JJ., concur.

Judgment unanimously reversed with costs and the complaint dismissed with costs. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.